Hillsborough, }
  Dec., 1896. }

## STATE *v.* MOORE.

The treasurer of a corporation, who, upon surrender to him of a valid certificate of stock, issues a new certificate for the same number of shares and subsequently reissues the original certificate, thereby causing the outstanding stock to be in excess of the authorized amount, cannot be convicted of knowingly, falsely, and fraudulently issuing the later certificate, although at the time of its issue his intention was not to retire the earlier certificate, but to reissue it.

INDICTMENT, for knowingly, falsely, and fraudulently issuing a certificate of stock of the Union Publishing Company to R. G. Sullivan, February 1, 1895. The facts are sufficiently stated in the opinion.

*James P. Tuttle,* solicitor, *Edwin G. Eastman,* attorney-general, and *Robert J. Peaslee,* for the state.

*Streeter, Walker & Hollis, Joseph W. Fellows,* and *Charles H. Burns,* for the defendant.

BLODGETT, J. The indictment in this case is under *s.* 12, *c.* 273, P. S., which enacts that "If any officer, agent, or servant of a corporation, or any other person, shall knowingly, falsely, and fraudulently issue a certificate for any stock of the corporation, or shall fraudulently sign any such certificate in blank or otherwise with the intent that it shall be so issued by himself or any other person, he shall be fined not exceeding five thousand dollars, or be imprisoned not exceeding five years."

The specific charge against the defendant is that while and as treasurer of the Union Publishing Company, a corporation duly established by law and having its place of business at Manchester, in our county of Hillsborough, he knowingly, falsely, and fraudulently issued, on the first day of February, 1895, at Manchester aforesaid, a certificate numbered 111 for twenty shares of the capital stock of said corporation to one R. G. Sullivan.

At the trial, it appeared that by divers votes of the corporation its treasurer was authorized to issue capital stock to the amount of $150,000; and the claim of the state was that said certificate 111 was not only in excess of that amount and without right, but that the defendant issued it knowingly, falsely, and fraudulently, as charged in the indictment.

Upon these issues the claim of the defence, so far as it need now be considered, was that No. 111 was not in excess of the

authorized amount; but that whether it was or was not, it was issued in place of a valid certificate for the same number of shares of which the defendant at that time was the owner, and which was held by Sullivan as collateral to the defendant's indebtedness to him upon certain notes, which were substantially paid by the new certificate.

Whether No. 111 was so issued and received thus became one of the vital questions to be determined by the jury, and upon it they were instructed as follows: " Did he [the defendant] retire a certificate of the stock and issue this in place of it? The defendant's counsel claim that he did; and the state, on the other hand, says he made no such arrangement with Sullivan, but whether he made any such arrangement or not with Sullivan, he has done nothing of the kind. The state says to you, and would have you to understand, that the certificate of stock which was in Sullivan's hands was No. 57; that that was a valid certificate, but that the respondent did not retire that certificate and issue this in place of it, but instead of that, issued this as a false certificate and parted with his title to the old one to some other person,— that is, that he did not retire that and issue this in place of it. Now that is the question for you to determine; that is the vital question in this case. . . . Of course you are not confined to certificate No. 57. Is there any other certificate which he retired and issued this in place of? Of course, in determining whether there was or not, you are to say whether, from all the evidence, there was any such certificate or not. It would not be enough that he [the defendant] should make an arrangement with Sullivan to retire this certificate. If he did not carry out this arrangement, but issued the certificate to some one else, that would not be retiring it and issuing this in place of it." To the latter part of the instruction, beginning " It would not be enough," the defendant excepted ; and we think the exception must be sustained.

In any aspect of the case, the inquiry most favorable to the state could only be, not what the defendant agreed to do in respect of retiring the surrendered certificate, nor what he actually did in this regard, but what his purpose was at the time the transaction between Sullivan and himself was consummated; or, in other words, whether he did or did not then intend to retire such certificate. But in either event, and whether the certificate was surrendered to him in his official capacity as treasurer or in his individual capacity as owner, it was his legal duty to retire it, and this duty could not be made dependent upon any arrangement or agreement with Sullivan. And so, too, if the defendant did not retire such certificate, but, either in his official or individual capacity, reissued it by transferring it to some third party, it would only be evidence for the

consideration of the jury as to his intent to reissue it at the time No. 111 was issued, and might be far from decisive. But even the question of his then existing intention was not alluded to by the court, nor submitted to the jury in this connection; on the contrary, the jury might well have understood, and presumably did understand, from the instructions given, that the subsequent transfer of the surrendered certificate by the defendant would of itself warrant his conviction.

The true inquiry, however, may not have been one of the defendant's intention when No. 111 was issued. If, as is claimed in his behalf, No. 57 was surrendered to him in his official capacity as treasurer, it was his lawful right, as well as his duty, to issue No. 111 in its place; and if this be so, his intention in making such issue would apparently be immaterial upon the charge made against him by the indictment which, it must be borne in mind, is not that the issue of No. 111 was part of an unlawful scheme or plan on his part to effect a false and fraudulent overissue of stock of the corporation, but solely that he falsely and fraudulently issued that particular certificate. But the intent with which a lawful act is done cannot make the act itself unlawful. The exercise by one man of a legal right cannot be a legal wrong to another. Injury, in its legal sense, means damage resulting from an unlawful act, not a lawful one. Indeed, these propositions are axiomatic.

If, then, it were conceded that at the time No. 111 was issued the defendant's intention was not to retire, but to reissue No. 57, and that, in accordance with such intention, he subsequently did reissue it, both of these admissions would be alike immaterial under the indictment, because in the case supposed the defendant's offence plainly would not be the issue of No. 111, but the reissue of No. 57; and for that he was not on trial.

Objections to the sufficiency of the indictment, to the admission of testimony, and to the refusal to charge as requested, have not been considered. It is unnecessary, and would be useless, to go further. However correct, as an abstract proposition, the instruction as to retiring the old certificate may have been, it was confusing and misleading in the connection in which it was given, and manifestly tended to the defendant's prejudice.

*Verdict set aside.*

WALLACE, J., did not sit: the others concurred.